Russell Davis (SBN 177959)
PACIFIC JUSTICE INSTITUTE
29 Lakewood Ave.
San Francisco, CA 94127
Tel. (415) 310-6575
rdavis@pji.org

Kevin T. Snider (SBN 170988)
PACIFIC JUSTICE INSTITUTE
ksnider@pji.org
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Fax (916) 857-6902
ksnider@pji.org

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELENA KEENE, MELODY FOUNTILA, MARK MCCLURE, DARRELL TAKASATO, SHANNON HARTMAN, KATIE LIGHTFOOT, MD,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO; LONDON BREED, Mayor of San Francisco in her official capacity; CAROL ISEN, Human Resources Director, City and County of San Francisco, in her official capacity; SANTA CLARA VALLEY MEDICAL CENTER; PAUL E. LORENZ, Executive Director of Santa Clara Valley Medical Center, in his official capacity; DR. DAVID JACOBSON, Director of Medicine Residency at Santa Clara Valley Medical Center, in his official capacity; JEFFREY V. SMITH, Executive Officer for Santa Clara County, in his official capacity; DOES 1-100,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, DAMAGES**<br><br>[Demand for Jury Trial] |

1. COME NOW Plaintiffs SELINA KEENE, MELODY FOUNTILA, and MARK MCCLURE, employees of Defendant CITY and COUNTY OF SAN FRANCISCO hereinafter CCSF), Plaintiffs SHANNON HARTMAN, DARRELL TAKASATO, and KATIE LIGHTFOOT, MD, employees of Defendant SANTA CLARA VALLEY MEDICAL CENTER (hereinafter SCVMC), seeking declaratory and injunctive relief, in the form of a preliminary and permanent injunction, barring Defendants, and all those in active concert, from abridging Plaintiffs' constitutionally and statutorily protected rights guaranteed by Title VII of the Civil Rights Act of 1964, and the California Fair Employment and Housing Act. Plaintiffs also seek damages for violation of their fundamental civil rights.

## JURISDICTION AND VENUE

2. This Court has jurisdiction and venue over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983 and 1988 because the Defendants are violating Plaintiffs' civil rights; and 42 U.S.C. § 2000e-5(f)(3), which confers original jurisdiction on federal district courts to address the deprivation of rights, privileges, and immunities secured by the United States Constitution and federal law, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

3. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, and Federal Rules of Civil Procedure, Rule 57 and 65.

4. Supplemental Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the U.S. Constitution.

5. This Court has the authority to award Plaintiffs' attorneys' fees and costs associated with this action pursuant to 42 U.S.C. §§ 1988 and 1983 and other applicable laws.

6. Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b) because the relevant events have occurred and are threatened to occur in this jurisdictional district and division.

**The Vaccine Mandates**

7. On June 23, 2021, CCSF demanded that all 35,000 of its employees be vaccinated against COVID-19 or risk losing their jobs. The requirement would take effect once a COVID-19 vaccine received full authorization from the Food and Drug Administration. Due to the FDA's authorization of the Pfizer vaccine, the mandate was revised.   Thereafter, in a mandate issued by Defendant LONDON BREED, all CCSF workers were to be vaccinated by November 1, 2021.

8. On August 5, 2021, Defendant JEFFREY V. SMITH, County Executive for Santa Clara County, issued an order that all County employees were to be vaccinated by November 1, 2021, or risk losing their jobs. Defendant PAUL E. LORENZ, Executive Director of Santa Clara County Medical Center, implemented the County vaccine mandate at SCVMC.

**PARTIES**

**Plaintiffs**

9. Plaintiff SELENA KEENE, is and was at all times relevant to this action, a qualified/eligible employee of Defendant CCSF, within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act. Plaintiff resides in San Francisco County, California. Based on her sincerely held religious beliefs she requested, and was denied, a religious accommodation to the vaccine mandate imposed by Defendant LONDON BREED. That mandate was implemented by Defendant CAROL ISEN, who as head of the CCSF's HR Department is responsible for implementing the vaccine mandates against all CCSF employees.

10. Plaintiff MELODY FOUNTILA is and was, at all times relevant to this action, a

qualified/eligible employee of Defendant CCSF, working for the CCSF within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act. Plaintiff resides in Contra Costa County, California. She was infected with and survived COVID-19. Based on her sincerely held religious beliefs she requested, and was denied, a religious accommodation to Defendant LONDON BREED's vaccine mandate. She also requested a medical exemption based on the fact that she has natural immunity to COVID-19 and the antibodies to prove it. Her medical exemption request was also denied.

11. Plaintiff MARK MCCLURE is and was, at all times relevant to this action, a qualified/eligible employee of Defendant CCSF, within the meaning of the California Fair Employment and Housing Act, and Title VII of the Civil Rights Act. Plaintiff resides in San Mateo County, California. His request for a religious accommodation to Defendant LONDON BREED's vaccine mandate, based on his sincerely held religious beliefs, was denied.

12. Plaintiff DARRELL TAKASATO is and was, at all times relevant to this action, a qualified/eligible employee of Defendant SCVMC hospital, within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act. Plaintiff resides in Santa Clara County, California. His religious accommodation request to SCVMC's vaccine mandate, based on his sincerely held religious beliefs, was provisionally granted; however, no reasonable accommodation was made. He was put on administrative leave using his paid vacation time. In order to keep his medical benefits he was forced to resign on December 1, 2021.

13. Plaintiff SHANNON HARTMAN is and was, at all times relevant to this action, a qualified/eligible employee of Defendant SCVMC, working for SCVMC within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act. Plaintiff resides in Santa Clara County, California. Her request for religious accommodation to the vaccine mandate, based on her sincerely held religious beliefs, was provisionally granted; however, no

reasonable accommodation was made. She is a radiation therapist and was offered a demotion to clerical worker at a loss of $120,000.00 per year in pay. In lieu of this demotion, Plaintiff elected to take paid administrative leave using her vacation time. Due to her loss of income she was forced to sell her house.

14. Plaintiff KATIE LIGHTFOOT, MD is and was, at all times relevant to this action, a qualified/eligible employee of Defendant SCVMC, working for SCVMC within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act. Plaintiff resides in San Mateo County, California. She was and is a resident in internship at SCVMC, with a one-year contract for said residency that has now been breached by SCVMC. When she started in June 2021, Plaintiff was not informed that she would be required to get the COVID-19 vaccine as a condition of employment. She filed a request for a religious accommodation, which was provisionally granted through October 2021. However, despite DR. LIGHTFOOT's willingness to undergo daily testing and to wear an N95 mask at all times while in the hospital, SCVMC denied her request for a permanent accommodation that would allow her to complete her residency. Instead, LIGHTFOOT was allowed to conduct eight weeks of non-patient-facing research/reading block time, which will expire in January 2022. After that, she must use her paid vacation time, which will run out on or about the end of January 2022. Thereafter she will be forced to take an unpaid leave of absence. SCVMC's unwillingness to provide an accommodation that will allow her to meet with patients severely prejudices her chance of finishing her residency, and thereby her career. Although DR. LIGHTFOOT would be willing to transfer to another program that does not have a vaccine mandate, most programs do not have funding for an additional resident. She thus asked SCVMC to write a letter to the Accreditation Council for Graduate Medical Education (ACGME), asking them to invoke their policy for displaced residents, which would allow a transfer program to request additional funding. However, SCVMC flatly refused to assist DR.

LIGHTFOOT because it did not want to lose the funding for her position (even though it is no longer allowing her to continue her training). Instead of assisting her with a transfer, Plaintiff's program director, DR. JACOBSON, further sabotaged her medical career by reporting on her vaccine status to a residency program in New York where she is scheduled to complete another, different residency. In the course of numerous meetings in which he interrogated DR. LIGHTFOOT about her religious beliefs, DR. JACOBSON repeatedly warned her that her religious beliefs may preclude her from practicing medicine. At no point has anyone at SCVMC called into question the sincerity of Dr. LIGHTFOOT'S religious beliefs.

15. All Plaintiffs have union contracts which do not mention COVID-19 or mandatory vaccinations. Because those contracts, in some cases, are hundreds of pages long, Plaintiffs herein provide URLs to those contracts which will not be appended to this Complaint.[1] The contracts for Plaintiff LIGHTFOOT are attached as Exhibit 1 and 2. All Plaintiffs have received right to sue letters from the EEOC or the DFEH.

**Defendants**

16. Defendant CCSF is a qualified/eligible employer within the meaning of the California Fair Employment and Housing Act and Title VII and conducting its operations in San Francisco County. It employs Plaintiffs FOUNTILA, KEENE, and MCCLURE. It is an administrative and political subdivision of California that consists of a geographic region with specific boundaries and some level of governmental authority.

---

[1] Union contract for Plaintiffs TAKASOTA and HARTMAN: https://employeeservices.sccgov.org/sites/g/files/exjcpb531/files/SEIU%20Local%20521%203-9-20%20-%206-25-23.pdf; union contract for Plaintiffs KEENE and FOUNTILA: san-francisco-city-and-county_cba_7.1.2019-6.30.2022_not_signed_0.pdf (seiu1021.org); union contract for Plaintiff MARK MCCLURE: https://sfdhr.org/sites/default/files/documents/MOUs/Laborers-International-Union-Local-261-MOU-2019-2022.pdf.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17. Defendant LONDON BREED is and was, at all times relevant to this action, Mayor of the City of San Francisco. She resides in San Francisco County. She is sued in her official capacity. The Mayor of the City and County of San Francisco is the head of the executive branch of the San Francisco City and County government. This officeholder has the duty to enforce city laws and the power to either approve or veto bills passed by the San Francisco Board of Supervisors. Because of San Francisco's status as a consolidated city-county, the Mayor also serves as the head of government of the County and can issue executive orders and/or mandates, and did in fact issue a vaccine mandate for all CCSF employees.

18. Defendant CAROL ISEN is and was, at all times relevant to this action, head of the Human Resources Department of CCSF. She is being sued in her official capacity. The HR Department is tasked with maximizing employee productivity and protecting CCSF from any issues that may arise within the workforce. HR responsibilities include compensation and benefits, recruitment, firing, and keeping up to date with any laws that may affect the company and its employees. The Human Resources Department executes the Mayor's vaccine mandate by terminating employees that are not vaccinated. For purposes of this litigation, termination includes, but is not limited to, being placed on forced administrative leave or having employees use up their accrued benefits, such as FMLA time, sick time, and vacation time while waiting out the results of this litigation.

19. Defendant SCVMC, commonly known as Valley Medical Center or simply Valley Medical, is a prominent 731-bed public tertiary, teaching, and research public hospital in San Jose. It employs Plaintiffs TAKASATO, HARTMAN, and LIGHTFOOT.

20. Defendant PAUL E. LORENZ is the Executive Director of SCVMC. He is directly responsible for enforcing Santa Clara County's vaccine mandate at SCVMC.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

21. Defendant DR. DAVID JACOBSON is the Program Director for internal medicine residents at SCVMC. He has repeatedly interrogated DR. LIGHTFOOT about her religious beliefs, insinuating that they are somehow insincere, which they are not. DR. JACOBSON is primarily responsible for denying Dr. LIGHTFOOT an accommodation that would allow her to continue her training, such as by wearing personal protective equipment, face shields, or masks (as healthcare providers did for nearly a year before the vaccines became available) and being tested either daily or twice weekly. He has also acted improperly by contacting DR. LIGHTFOOT's future employer and disclosing her vaccination status. Instead of advocating for DR. LIGHTFOOT, he has repeatedly warned her that her religious beliefs would likely preclude her from ever practicing medicine. DR. LIGHTFOOT understood these comments as threats designed to induce her to violate her religious beliefs by taking the vaccine. On information and belief, DR. JACOBSON was also involved in SCVMC's decision to reject DR. LIGHTFOOT's request to assist her in asking ACGME (the Accreditation Council of Graduate Medical Education–which is the governing body over graduate medical education) to designate her as a displaced resident. As a result, DR. LIGHTFOOT will likely be unable to transfer to a program that does not have a vaccine mandate (of which there are several). This decision to not assist DR. LIGHTFOOT was apparently motivated by a desire to prevent the federal funding provided for DR. LIGHTFOOT's training from going to another program.

22. Defendant JEFFREY V. SMITH is the County Executive for Santa Clara County. The office of the County Executive provides analytical support, strategic planning, policy analysis, and budgetary oversight for the Santa Clara County. In addition, it seeks to safeguard the civil rights, and to educate, inform, and advise both those who administer and those who receive County services. Defendant SMITH is directly responsible for issuing the Santa Clara County vaccine

mandate at issue in this case. That mandate required all employees of Santa Clara County to be vaccinated or face termination.

23. The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1 through 100, inclusive are unknown to Plaintiffs at this time, who therefore sues said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants are in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and are legally responsible in some manner. Plaintiffs will seek leave to amend this Complaint when the true names, capacities, participation, and responsibilities have been ascertained.

24. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, the CCSF Defendants named in this action, and in turn the SCVMC and County defendants, as well as the fictitiously named Defendants, and each of them, were agents and employees of the remaining Defendants, and in so doing the things hereinafter complained of, were acting within the course and scope of such agency and/or employment and with the knowledge and consent of the remaining Defendants.

## STATEMENT OF FACTS

25. Due to the vaccine mandates, supra, Plaintiffs have been forced to take administrative leave and to use sick time, vacation time and FMLA time in order to mitigate their damages and to "buy" time while this litigation progresses.

26. Plaintiff TAKASOTA, after exhausting his vacation time, has been forced to resign and to take an early retirement that is not sufficient for him to continue living in California.

27. Plaintiff HARTMAN has been forced to sell her house because she can no longer afford the payments.

28. Plaintiff LIGHTFOOT might lose her career, not to mention having to pay back student loans without the requisite income from being a doctor.

29. Plaintiff FOUNTILA experienced hostility from vaccinated co-workers and had to check her feelings and emotions. She now loses sleep over the prospect of not being able to support herself. Assuming that CCSF wants their staff to have immunity to COVID-19, FOUNTILA's termination is especially egregious because she has natural immunity to the disease.

30. Plaintiff MCCLURE lost his pension and at age sixty (60) worries about trying to search for another job. His employment with the City and County had been a reliable source of income, and at his age it is a hardship to seek full time employment. His family income has been cut in half. He can no longer afford health care, his mortgage payments are in jeopardy, and his utility bills are now unaffordable.

31. Plaintiff KEENE has an a-fib condition. That condition was exacerbated by stress incident to her fear of loss of income, medical benefits, promotional opportunities, retirement income, and payments for her medical insurance. As a result, she was forced to take disability leave on October 27, 2021.

32. The Defendants arbitrarily and unreasonably implemented the mandates. The mandates fail to address  the reality that unvaccinated employees with accommodations can safely perform their job duties protecting themselves, fellow employees, and the community they serve through non-pharmaceutical interventions, such as daily health screenings, wearing masks, quarantine, taking the new COVID-19 pill and, in some cases, telecommuting for work. Before the mandates were implemented, the Plaintiffs were called heroes for staying on the job and working through the worst of the COVID-19 pandemic. During that time, the Defendants relied on weekly testing, wearing of masks, PPE, and telecommuting as the primary means of protecting the peace, health, and safety of the public, other employees, and themselves. Now Plaintiffs are being terminated

1
2
3

because they do not want to take an experimental drug that violates their protected religious beliefs, and because the Defendants will not admit the efficacy of the prior means of protecting the public and their employees.

4
5
6
7
8
9
10
11
12

33. The mandates at issue ignore peer-reviewed studies comparing naturally acquired and vaccine acquired immunity. Those studies show overwhelmingly that natural immunity provides equivalent or greater protection against severe infection from COVID-19 than immunity generated by mRNA vaccines. CCSF, LONDON BREED, SCVMC, and the Santa Clara County Executive do not and cannot point to any evidence that vaccinated individuals have longer lasting or more complete immunity than those who have recovered from COVID-19. Early data also suggests that naturally acquired immunity may provide greater protection against COVID variants than vaccine-induced immunity.

13
14
15
16
17

34. CCSF and Santa Clara County's refusal to allow an opt out, especially for employees with naturally acquired immunity, is not based on science. In line with this unreasonable and arbitrary refusal, the CCSF and Santa Clara County do not provide any process for employees to submit test results showing antibodies that provide natural immunity from COVID-19.

18
19
20
21

35. The mandates further presume that requiring vaccination of an individual that has already contracted and recovered from COVID-19 will not cause any short-term or long-term injuries. This presumption is based on absolutely no evidence and is purely conjectural.

22
23
24
25
26
27

36. The mandates are also based on a misunderstanding that an FDA-approved vaccine is currently available in the United States. On information and belief, all of the vaccines for COVID-19 currently being used in the United States remain under Emergency Use Authorization (herein "EUA"). The only COVID-19 vaccine granted full approval (Comernity) by the FDA in August 2021 has not yet been administered in the United States. It is still unavailable for the employees now subject to the vaccination mandate.

28

**FIRST CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e et seq.**
**(Against All Named Defendants)**

37. The preceding paragraphs are hereby incorporated and realleged as though fully set forth herein.

38. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., provides broad workplace protections for people of sincere religious faith.

39. Among other protections, it is generally unlawful for an employer to "exclude or to suspend an employee, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1).

40. Within this framework, Title VII requires an employer to reasonably accommodate an employee's sincere religious observances and practices, unless such an accommodation would impose an undue hardship on the employer.

41. Pursuant to 42 U.S.C. § 2000e (j), "religion" in the employment context is defined as "all aspects of religious observance and practice, as well as belief." In view of this broad definition by Congress, it cannot be said that any employer covered by Title VII may legally or constitutionally require an employee to belong to any "bona-fide" religious organization as a condition for receiving an accommodation.

42. Title VII protects the Plaintiffs and other City employees' rights to request religious or medical accommodations, as needed. The employer is required to evaluate the request and determine through an interactive process whether reasonable accommodations can occur and the employee must be provided a reasonable opportunity to submit such requests. Defendants have utterly failed to make reasonable accommodations for the Plaintiffs' religious accommodation requests. Given that employees could submit to daily health screenings, wearing of masks,

quarantine, taking the new COVID-19 pill, and telecommuting for work, those requests for accommodation would not amount to an undue hardship on the Defendants.

43. Plaintiffs' right to free exercise of religion cannot be conditioned on the Defendants' irrational mandates. All Defendants, in denying the Plaintiffs' exemptions, were doing so under color of law. Plaintiffs have been damaged as a result, and also seek equitable relief from these irrational mandates.

44. Plaintiffs herein seek declaratory and injunctive relief, mandating that Defendants accommodate their religious accommodation requests. Plaintiffs further request the same relief for medical exemptions based on having had COVID-19 and its concomitant antibodies.

### SECOND CAUSE OF ACTION
### Violation of the California Fair Employment and Housing Act (Cal. Govt. Code § 12900 et seq.) – Failure to Provide Religious Accommodation
### (Against All Named Defendants)

45. Plaintiffs hereby incorporate and reallege the preceding paragraphs as though fully set forth herein.

46. Under FEHA, it is an unlawful employment practice for an employer to discriminate against any employee or other covered person because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer demonstrates that it has explored any available reasonable means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with their belief and observance, or permitting those duties to be performed at another time or by another person.

47. Plaintiffs are persons and employees of Defendants within the meaning of FEHA.

48. Defendants were at all times relevant herein employers for purposes of FEHA.

49. Plaintiffs are able to perform the essential functions of their jobs with Defendants

and have been doing so successfully and commendably for many years, including working during the height of the pandemic.

50. The positions for which Plaintiffs were hired, and their union contracts, did not mention mandatory vaccines in their job postings, descriptions, or essential duties.

51. Nevertheless, the mandates at issue make clear that accepting certain vaccines are suddenly a de facto expectation for their positions.

52. Plaintiffs have strong, sincerely held religious beliefs that taking the COVID-19 vaccines would be morally wrong for them.

53. Plaintiffs have notified their supervisors of the conflict and in fact requested accommodations.

54. Accommodation would permit Plaintiffs to continue performing their essential functions as they have been doing for many years.

55. Defendants refused to explore available reasonable alternatives to the stated vaccine requirement or engage in any timely, interactive, meaningful, or good faith process with Plaintiffs to ascertain whether, in light of their extensive backgrounds and experience, they could in fact perform the essential functions of their positions without being vaccinated.

56. Defendants' refusal to accommodate, or even explore possible accommodation of Plaintiffs' religious beliefs, was a substantial motivating factor in Defendants' decision to restrict the terms and conditions of their employment.

57. As a result of Defendants' discriminatory actions, Plaintiffs suffered harm and are entitled to recover damages including but not limited to mental suffering, past and future lost earnings and benefits, and other compensatory damages in an amount according to proof.

58. Defendants intentionally violated Plaintiffs' rights with malice and recklessness in violation of FEHA, subjecting them to punitive or exemplary damages.

1
2

**THIRD CAUSE OF ACTION**
**Breach of Contract**
**(Against All Named Defendants)**

3
4

59. The preceding paragraphs are hereby incorporated and realleged as though fully set forth herein.

5
6
7
8
9
10

60. All Plaintiffs have union-negotiated contracts with their respective employers. All Plaintiffs are third party beneficiaries of those contracts and thereby have the right to enforce said contracts. None of the contracts reference COVID-19, nor do they give the employers a unilateral right to coerce vaccinations upon pain of losing employment. Changes to the union contracts must be bargained for in good faith. On information and belief, that has not happened.

11

61. All Plaintiffs have performed their contractual duties.

12
13
14
15

62. The Defendant employers breached their contracts with Plaintiffs by requiring Plaintiffs to comply with their vaccine mandates. Such forced compliance, given upon threat of job loss, is a material breach of the Plaintiffs' employment contracts.

16
17

63. As a result of the Defendant employers' breaches of contract, the Plaintiffs have been damaged in an amount to be determined at trial.

18
19

**FOURTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
**(Against All Named Defendants)**

20
21
22

64. The preceding paragraphs are hereby incorporated and realleged as though fully set forth herein.

23
24
25
26
27

65. Defendants failed to engage in meaningful negotiations to accommodate the Plaintiffs' religions. Defendants knew that they were violating FEHA yet continued their reckless behavior. Given that Plaintiffs' civil rights were being violated, the intentional failure to accommodate Plaintiffs constituted extreme and outrageous conduct. Defendants knew Plaintiffs would suffer irreparable harm from loss of employment, earnings, and professional standing as a result of their

28

religiously motivated refusal to be vaccinated and their termination resulting therefrom. Defendants' conduct was made with the intention of causing, or reckless disregard of the probability of causing, emotional distress. The Plaintiffs have suffered severe or extreme emotional distress caused by the Defendants' outrageous conduct in violating a public policy of California. Plaintiffs have been damaged as a result.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs move the Court for:

1. A preliminary and permanent injunction requiring Defendants to accept all sincere requests for religious accommodations to the taking of the COVID-19 vaccinations;

2. A preliminary and permanent injunction requiring Defendants to accept all sincere requests for medical exemptions based on having COVID-19 antibodies acquired as a result of surviving a COVID-19 infection;

3. Plaintiffs request compensatory damages in an amount according to proof;

4. Plaintiffs request reasonable costs of suit and attorneys' fees;

5. Plaintiffs request punitive damages for Defendants' willful, malicious, intentional, and reckless violations of Plaintiffs' civil rights;

6. Plaintiffs request such other and further relief as the Court may deem appropriate.

Dated:  December 21, 2021

           s/ Russell Davis
           Russell Davis, Esq.
           Kevin T. Snider, Esq.
           PACIFIC JUSTICE INSTITUTE

           *Attorneys for Plaintiffs*

1

## **DEMAND FOR JURY TRIAL**

2

      Plaintiffs demand a jury trial on all causes of action and claims to which they have a right

3

to a jury trial.

4

                                     s/ Russell Davis

5

                                     Russell Davis, Esq.
Kevin T. Snider, Esq.

6

                                     PACIFIC JUSTICE INSTITUTE

7

                                     *Attorneys for the Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF